IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CHAIN DRUG STORES; NATIONAL COMMUNITY PHARMACISTS ASSOCIATION; KLINGENSMITH DRUG INC., KOPP DRUG, INC.; LECH'S PHARMACY, PJL PHARMACY, INC.; MJR, LTD.; MJRRX, INC.; DAVID M. SMITH RPH, INC.; PROFESSIONAL SPECIALIZED PHARMACIES, LLC; ANBAR, INC.; SELLERSVILLE PHARMACY, INC.; TEP, INC.; THOMPSON ENTERPRISES INC.; BROAD AVE PHARMACY LLC; HOLLIDAYSBURG PHARMACY LLC; VALUE DRUG COMPANY; and VALUE SPECIALTY PHARMACY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EXPRESS SCRIPTS, INC. and MEDCO HEALTH SOLUTIONS, INC., <br><br> Defendants. | *Electronically Filed* <br><br> Civil Action No. 2:12-cv-00395-CB-CRE <br><br> Judge Cathy Bissoon |

**BRIEF OF AMICI CURIAE CONSUMER FEDERATION OF AMERICA, NATIONAL CONSUMERS LEAGUE, NATIONAL LEGISLATIVE ASSOCIATION ON PRESCRIPTION DRUG PRICES AND U.S. PIRG IN SUPPORT OF PLAINTIFFS**

Paul Titus, Esq.
*Schnader Harrison Segal & Lewis LLP*
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222
(412) 255-5224 (Telephone)
ptitus@schnader.com

David A. Balto, Esq.
Bradley Wasser, Esq.
*Law Offices of David Balto*
1350 I Street, NW, Suite 850
Washington, DC 20005
(202) 789-5424 (Telephone)
david.balto@dcantitrustlaw.com

*Counsel for Amici Curiae*

1

## INTRODUCTION

Competitive markets benefit all consumers by maintaining lower prices, promoting innovation, and developing efficiencies. Amici Curiae Consumer Federation of America, National Consumers League, the National Legislative Association on Prescription Drug Prices, and U.S. PIRG (collectively, the "Amici") are leading advocates for competitive markets, especially in the health care environment. Amici are concerned with the abusive, anti-consumer conduct of pharmacy benefit managers ("PBMs"), especially Express Scripts, Inc. ("Express Scripts") and Medco Health Solutions, Inc. ("Medco"), and respectfully submit this brief in support of Plaintiffs' case to enjoin the merger between Express Scripts and Medco because this transaction raises crucial issues concerning the protection of prescription drug costs and the preservation of consumer choice and access. The substantial lessening of competition alleged in the Plaintiffs' complaint potentially harms millions of consumers, and for this reasons the merger should be enjoined.

## STATEMENT OF AMICUS CURIAE

The Amici are public interest groups and advocates for competitive health care markets.

Amicus Curiae Consumer Federation of America ("CFA") is composed of over 280 state and local affiliates representing consumer, senior-citizen, low-income, labor, farm, public power and cooperative organizations. CFA represents consumer interests before federal and state regulatory and legislative agencies, participates in judicial proceedings as amicus curiae, and conducts research and public education.

Amicus Curiae National Consumers League ("NCL") is America's oldest consumer organization, representing consumers and workers on marketplace and workplace issues since

1899. NCL provides government, businesses, and other organizations with the consumer's perspective on concerns including child labor, privacy, food safety, and medication information.

Amicus Curiae National Legislative Association on Prescription Drug Prices ("NLARx") is a national nonprofit, nonpartisan organization of state legislators who support policies to reduce prescription drug prices and expand access to affordable medicines.

Amicus Curiae U.S. PIRG (Public Interest Research Group) ("U.S. PRIG") is a federation of 28 non-profit, non-partisan state Public Interest Research Groups. The PIRGs have worked on behalf of American consumers since 1970 for a fair and competitive marketplace, a sustainable economy, and a responsive, democratic government. In association with the U.S. PIRG Education Fund, U.S. PIRG's staffs of policy experts, researchers, organizers, and advocates have authored reports, generated media coverage, organized citizens, and lobbied in the state and federal legislatures winning important victories in the areas of consumer protection, public transportation, product safety, health care, and good government. U.S. PIRG has a long track record of advocacy to improve the quality and lower the cost of prescription drugs. U.S. PIRG is supported by contributions from its hundreds of thousands of citizen members. U.S. PIRG Education Fund receives significant funding from foundation grants.

Amici have long been concerned by the egregious, deceptive, and anticompetitive conduct of PBMs. Notwithstanding any cost benefits PBMs may offer, they often harm consumers by engaging in deceptive practices, eliminating access to vital health care services, and reducing consumer choice. To police this market a coalition of over 30 state attorneys generals have brought cases against each of the three (and now two should this merger not be enjoined) major PBMs—Express Scripts, Medco and CVS Caremark—for fraud; misrepresentation to plan sponsors and patients; kickback schemes; and failure to meet ethical

and safety standards, resulting in over $370 million in damages.[1] While these abuses by PBMs have certainly established PBM conduct as a general area of considerable public concern, Amici are specifically concerned with the merger of two of the three largest PBMs, Express Scripts and Medco, and the negative impact the merger will have on drug prices and continued choice and access to critical retail community pharmacy services.

This transaction raises issues directly relevant to millions of consumers across the nation. Plaintiffs assert that the merger between Express Scripts and Medco will result in a loss of competition for PBM services, as well as a reduction in competition for the distribution of drugs to consumers. This includes substantial anticompetitive effects in the purchase of retail community pharmacy services and "Clinical Specialty Drugs." Plaintiffs allege that the reduction in competition will reduce the quality of prescription drug care provided to tens of millions of patients, force patients into PBM owned mail-order operations, and increase patients' healthcare costs by increasing PBM fees and prices for prescription drugs.

Amici submit this brief because such consolidation among health care companies has a substantial likelihood to significantly increase drug costs and decrease consumer access to prescription drugs and accompanying vital pharmacy services. Amici therefore respectfully request that the Court grant Plaintiffs the appropriate relief they are seeking and permanently enjoin the merger.

---

[1] *The Effects of Regulatory Neglect on Health Care Consumers: Hearing Before the Consumer Protection, Product Safety, & Insurance Subcomm. of the S. Comm. on Commerce, Science & Transportation*, 111th Cong. (July 16, 2009) (statement of David Balto, Senior Fellow, Center for American Progress), *available at* http://www.americanprogress.org/issues/2009/07/balto_testimony.html.

# ARGUMENT

## I. Substantially reduced competition for PBM services will result in increased costs to consumers.

Prior to the Federal Trade Commission's ("FTC") April 2, 2012 decision to clear Express Script's acquisition of Medco, the PBM market was dominated by three firms: Express Scripts, Medco and CVS Caremark (the "Big Three"). This merger narrows the market to two major players, with Express Scripts alone now accounting for 45 percent of the market,[2] and over 130 million covered lives. The Big Three serve a majority of the largest plan sponsors. In fact, over 40 of the "Fortune 50" largest corporations rely on these big 3 for PBM services. A significant number of employers, unions, and health plans view the three major PBMs as their only viable options. Therefore, when one of the major PBMs loses a large contract it is almost always picked up by another of the three.

The Defendants argue that there are many other PBMs in the market that serve as a sufficient price constraint on the remaining two PBMs. This assertion is misguided. As concluded by the American Antitrust Institute on this point:

> The three national full service PBMs already have significant cost advantages from economies of scale and from vertical integration in mail order and specialty pharmacy distribution. When faced with these difficult entry and expansion barriers, the remaining second tier PBMs cannot adequately constrain potential anticompetitive conduct because of their smaller size, geographic limitations, lack of buyer power, and, in some cases, perceived conflicts regarding their corporate affiliation with large plan sponsors.[3]

---

[2] Dissenting Statement of FTC Commissioner Julie Brill, *In the matter of Express Scripts, Inc./Medco Health Solutions*, File No. 111-0210 (April 2, 2012).
[3] American Antitrust Institute. Letter to FTC Chairman Leibowitz regarding the Proposed Merger of Express Scripts, Inc. and Medco Health Solutions (November 30, 2011).

Because there are few other choices for PBM services, Express Scripts has the incentive and ability to increase the prices it charges for its services. As health care costs rise for plan sponsors, these additional costs are certain to be passed on to consumers.

Express Scripts and Medco argued throughout the eight-month merger investigation that the combination will lead to synergies, including up to $1 billion in health care cost savings for consumers.[4] Amici remain very skeptical of the claimed efficiencies due to the proclivity of the Defendants to pad their own pockets instead of passing savings on to consumers. In a similar matter the District Court for the District of Columbia considered whether increased buying power through the merger of national drug wholesalers constituted a cognizable efficiency sufficient to offset competitive concerns.[5] The Court addressed the question of whether, and to what extent, the burden of demonstrating an "extraordinary" efficiency is satisfied in a merger to duopoly (like the transaction in question) in which the combined firm proffers to benefit consumers through additional cost savings. The court concluded that the benefits did not outweigh the concerns, holding that the savings were not likely to be passed on to consumers, and that the efficiencies were not specific to the merger.[6]

Based on past conduct in the PBM industry, it is highly unlikely that Express Scripts will pass on savings obtained through rebates to public and private payors. Consumers will bear these price increases in the form of higher premiums and higher copays. For example, because

---

[4] *Hearing on the Proposed Merger Between Express Scripts, Inc. and Medco Health Solutions Before the S. Comm. on the Judiciary*, 112th Cong. (Dec. 6, 2012) (testimony of David B. Snow, Jr., CEO, Medco Health Solutions).
[5] *Federal Trade Commission v. Cardinal Health, Inc.,* 12 F.Supp.2d 34 (D.D.C. 1998).
[6] *Id.* at 63.

the Big Three have a history of not fully sharing the savings they secure with plan sponsor customers; their profits have increased by almost 600 percent since 2003.[7]

## II. The merger will decrease consumer choice and access to critical retail community pharmacies.

The combination of Express Scripts and Medco will increase the incentive and ability for the merged company to create highly restrictive pharmacy networks, force patient into their captive drug distribution operations, and exercise monopsony market power over retail pharmacies. Courts recognize the consumer harm that may result from granting or enlarging monopsony power. *See, e.g. North Jackson Pharmacy Inc. vs. Caremark Rx, Inc.* 385 F. Supp. 2d 740, 749 (N.D. Ill. 2005) (explaining "The exercise of [monopsony] power causes competitive harm because the monopsonist or the group will shift some purchases to a less efficient source, supply too little output to the downstream market, or do both."). The result of this will be to exclude numerous retail community pharmacies and specialty pharmacies from available networks, and therefore significantly limit patient choice.

This merger will also harm consumers as it would allow the remaining two national PBMs to shrink the number of retail community pharmacies. By lowering reimbursement to retail community pharmacies, the Big Three PBMs already make it difficult for these high-value health care providers to survive. The transaction would exacerbate this trend, and result in community pharmacies lessening their services or, worse – closing their doors, substantially limiting access to consumers' preferred pharmacy service providers.

---

[7] The combined profits of Medco, CVS Caremark and Express Scripts increased almost six-fold from $900 million to almost $6 billion between 2003 and 2010.

7

Reduced reimbursement is not necessarily good for consumers, especially in healthcare markets. When monopsony power forces healthcare providers to accept less money for services, it is likely that the consumer will suffer through a lessening of quality of service. The Third Circuit has dealt with a case of reduced reimbursement in a health care market alleging that an insurer, Highmark, reduced reimbursement to a hospital, West Penn. The insurer argued that there was no problem because lower reimbursement would lead to lower premiums, but the Court rejected the argument:

> [E]ven if it were true that paying West Penn depressed rates enabled Highmark to offer lower premiums, it is far from clear that this would have benefitted consumers, because the premium reductions would have been achieved only by taking action that tends to diminish the quality and availability of hospital services.[8]

The market power resulting from the combined Express Scripts will harm consumers as it will allow the remaining two major PBMs, Express Scripts and CVS Caremark, to decrease compensation to retail pharmacies below competitive levels. Consumers will suffer because the retail community pharmacist is the most trusted healthcare professional; retail pharmacies provide consumers with valuable clinical services and counseling, often free of charge; and some pharmacies, especially supermarket pharmacies, offer drugs at lower prices than the PBMs, such as through $4/month generic programs.[9] Decreases in reimbursement jeopardize many of these programs and services that consumers highly value. As retail pharmacies are already economically efficient and operate on very minimal margins, these cuts to pharmacy reimbursement would likely result in harm to consumers.

---

[8] *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F. 3d 85 (3d Cir. 2010).
[9] See Food Marketing Institute, Letter to FTC Chairman Leibowitz regarding the Proposed Merger of Express Scripts, Inc. and Medco Health Solutions (Feb. 2, 2012).

### III. The merger will establish dominance for Express Scripts in the specialty pharmacy arena resulting in decreased access to care for vulnerable patients.

The merger will grant Express Scripts over a 31 percent market share in the specialty pharmacy area through the integration of Medco's captive specialty pharmacy, Accredo, into its own captive specialty pharmacy, CuraScript. This is of particular concern to the 57 million Americans that rely on specialty drugs.[10] "Clinical specialty drugs," as defined by the Plaintiffs, are typically expensive treatments that require special handling or administration. These drugs provide treatment for our nation's most vulnerable patient populations who suffer from chronic, complex conditions such as hemophilia, Crohn's Disease, Hepatitis C, HIV/AIDS, and many forms of cancer. This incredible consolidation of the specialty market is of particular concern to consumers given the fact that specialty drugs are expected to be the single greatest cost-driver in pharmaceutical spending over the next decade. The cost of specialty drugs is rising rapidly, increasing by 19.6 percent in 2010 and expected to reach as high as 27.5 percent by 2013.[11] Meanwhile, by 2016, 8 of the top 10 prescription drugs are expected to be specialty.[12]

Because the Express Scripts acquisition will grant it incredible dominance of the specialty pharmacy market, access to critical treatments will be restricted for specialty patients and the potential for price gauging will substantially increase. Enhancing Express Scripts' specialty pharmacy operations will only increase the incentive for the company to restrict pharmacy networks and drive patients in-house and away from the patient's specialty provider of choice.

---

[10] *Rising Health Costs, Medical Debt and Chronic Conditions*, Issue Brief, Center for Studying Health System Change (Sept. 2004).
[11] Express Scripts. *2010 Drug Trend Report: A Market and Behavioral Analysis* (April 2011).
[12] Medco Health Solutions. *2011 Drug Trend Report.* (2011).

Restrictive networks can also lead to disruptions in the continuum of care which degrade health outcomes and increase healthcare costs. Patients on specialty drugs often require regular contact and counseling from their pharmacist (who is often assisted by a nurse). For many disease states, the pharmacist and nurse regularly contact the patient to make sure the drug is properly administered, taken on time, and the drug is working effectively. Disrupting this patient-provider relationship in complex and expensive treatment of very sensitive health conditions imposes significant harm to both the consumer and the health plan.

Moreover, restrictive networks and steering practices rob consumers of the choice to use their preferred pharmacy and method of distribution; and—with this important rivalry gone—consumers also miss out on the benefits of vigorous competition, including lower prices and improved service. These restrictive networks deny patients a choice in provider and, given the high-touch nature of services in this area, this choice is highly valued by many consumers. Due to Express Scripts' control of specialty pharmacies it necessarily presents potential harm to consumers that depend on the high-cost products and services that are of great, and even life-altering, significance to patients in the specialty drug market.

With even greater dominance in the upstream PBM market, a merged Express Scripts will have an increased incentive and ability to engage in this anticompetitive practice of restricting networks and forcing patients to their own businesses. These restrictive networks, likely to increase post-merger, threaten to restrict patient choice, lead to disruptions in care, increase specialty drug prices, and limit patients' access to critical medications.

## CONCLUSION

The loss in competition resulting from Express Scripts' acquisition of Medco has the likelihood of substantially harming millions of consumers though increased prescription drug prices, and decreased choice and access to critical services provided by community and specialty pharmacies. Consumers will be forced into PBM owned mail-order operations and experience increasing healthcare costs through increasing PBM fees to plan sponsors. The savings that Express Scripts purports to acquire will not likely be passed on to consumers. Because of the substantial consumer harm resulting from the merger, Amici support the Plaintiffs' claims and urge the Court to permanently enjoin the merger of Express Scripts and Medco.

Respectfully submitted,

David A. Balto (*pro hac vice* to be filed)
Bradley Wasser (PA 308804)
*Law Offices of David Balto*
1350 I Street, NW, Suite 850
Washington, DC 20005
(202) 789-5424 (Telephone)
david.balto@dcantitrustlaw.com

   /s/ Paul H. Titus
Paul H. Titus (PA 01399)
*Schnader Harrison Segal & Lewis LLP*
120 Fifth Avenue, Suite 2700
(412) 577-5224 (Telephone)
(412) 765-3868 (Facsimile)
ptitus@schnader.com

*Counsel for Amici Curiae*

Dated: April 18, 2012