**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NATIONAL ASSOCIATION of CHAIN    )
DRUG STORES, *et al*.,    )
    )
    Plaintiffs,    )
    )    Civil Action No. 12-395
    v.    )    Judge Cathy Bissoon
    )
EXPRESS SCRIPTS, INC, *et al*.,    )
    )
    Defendants.    )

**MEMORANDUM ORDER**

For the reasons stated below, Plaintiffs' amended motion for a temporary restraining

order/permanent injunction and expedited schedule (Doc. 22) will be disposed in the following

manner. First, consistent with the order of this court of April 3, 2012, Plaintiffs' motion, to the

extent that it is for a temporary restraining order, will be treated as one for preliminary injunction

and is, hereby, denied. To the extent that Plaintiffs seek a permanent injunction and expedited

discovery schedule, this Court's decision will be deferred until after a ruling is made on

Defendants' pending motion to dismiss. See (Doc. 43).

    A.  Facts

Defendants Express Scripts, Inc. ("ESI") and Medco Health Solutions, Inc. ("Medco")

(collectively "Defendants") are both pharmaceutical benefit management ("PBM") companies.

The record reflects that, on July 21, 2011, Defendants entered into an agreement and plan of

merger. The Federal Trade Commission engaged in an eight-month-long investigation of the

potential merger, but concluded that it would not take action.  This decision was communicated

publicly on April 2, 2012.   Defendants consummated their merger on the same day.

On March 29, 2012 – just prior to the finalization of the merger – Plaintiffs bought the

instant cause of action, alleging violations of Section 7 of the Clayton Act, 15 U.S.C. § 18.

(Doc. 1 at 45, 47).  Plaintiffs also filed a motion for temporary restraining order the next day.

(Doc. 20).  An amended motion for temporary restraining order and brief in support thereof were

filed on April 2, 2012.  (Docs. 22-23).  On the following day, given the appearance of counsel on

behalf of Defendants, this Court converted the amended motion for temporary restraining order

into one for preliminary injunction.  See Text Order of Apr. 3, 2012.  Defendants filed their

response in opposition to the preliminary injunction motion on April 6, 2012, (Doc. 46), and

Plaintiffs replied thereto on April 9, 2012.  Parties presented oral arguments on April 10, 2012.

This motion, insofar as it is one for preliminary injunction, is ripe for disposition.


B.  Analysis

"'[T]he grant of injunctive relief is an extraordinary remedy . . . which should be granted

only in limited circumstances.'" AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421,

1426-27 (3d Cir.1994) (quoting Frank's GMC Truck Center, Inc. v. General Motors Corp., 847

F.2d 100, 102 (3d Cir.1988)).  A party seeking a preliminary injunction must show: "'(1) a

likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is

denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving

party; and (4) that the public interest favors such relief.'" Ball v. Beard, 396 F. App'x 826, 827

(3d Cir. 2010) (quoting Kos Pharm., Inc. v. Andrx Corp, 369 F.3d 700, 708 (3d Cir. 2004)).

Additionally, "a showing of irreparable harm is insufficient if the harm will occur only in the

indefinite future.  Rather, the moving party must make a clear showing of immediate irreparable

harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) (internal quotes

omitted and emphasis removed).

A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction

[is] the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air

Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  The relevant inquiry is whether the party

moving for the injunctive relief is in danger of suffering the irreparable harm at the time the

preliminary injunctive relief is to be issued.  Id.  Speculative injury does not constitute a showing

of irreparable harm.  Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358-59 (3d

Cir. 1980); see also Public Serv. Co. v. Town of West Newbury, 835 F.2d 380, 383 (1st Cir.

1987).  Finally, "[i]n order to support a preliminary injunction, plaintiff must show *both* a

likelihood of success on the merits and a probability of irreparable harm." Campbell Soup Co.,

977 F.2d at 90-91 (emphasis added).

In light of the evidence and arguments presented by the parties, it is most efficient to

begin – and end – this Court's analysis with whether Plaintiffs have successfully met their

burden of demonstrating a likelihood of immediate, irreparable injury from Defendants' merger.

Plaintiffs assert that this transaction would result in two types of harm.  First "[i]ntegration of

[Defendants] would create an immediate and irreversible harm to competition by destroying two

significant competitors in the relevant markets." (Doc. 23 at 16).  Plaintiffs' bases for this

argument are that, unless a preliminary injunction holding separate ESI and Medco were issued,

ESI would displace Medco's management and operations personnel, assume Medco's

administrative functions, and learn confidential and trade secret information belonging to Medco,

such as their pricing data, negotiation strategy, "and other terms of competition that vigorous

competitors would never disclose to one another in ordinary circumstances . . . ." Id.

However, the record indicates that all of the fears expressed by Plaintiffs already have

been realized.  Defendants have presented evidence, through the declaration of ESI's general

counsel, that ESI and Medco began setting into place a detailed integration plan as early as July

of 2011 – well prior to the consummation of the merger on April 2, 2012.  (Doc. 46-2 ¶¶ 12-17).

This evidence, which is not contradicted by anything else on the record, indicates that, at the

time that the merger was closed, ESI "terminated virtually all of Medco's senior management . . .

[and] [a]s of the morning of April 6, 2012, 54 former Medco executives at the Vice President

level and higher had already departed or have been terminated, including virtually all of the

former Medco 'Senior Staff . . . .'"  Id. ¶ 17.  This appears to include the majority of Medco's

sales leadership and senior supply chain management team, and to have had at least some effect

on Medco's mail order pharmacy and financial operations as well.  Id. ¶¶ 23, 29-31, 33, 36.  The

record further indicates that Medco's confidential and trade secret information "relating to

customers, RFPs, pricing and other contract terms, vendors, pharmaceutical rebates, retail

pharmacy networks (including reimbursement rates), compensation, strategic plans, clinical

programs and patient data, and proprietary IT systems" already has been provided to ESI.  Id.

¶ 19.

In short, Defendants' evidence demonstrates that an order holding separate Medco from

ESI – even if such an order had been issued at the moment the instant motion had been filed –

would result in a headless organization that would likely be unable to survive on its own, much

less compete against ESI.  This, ironically, is exactly the harm that Plaintiffs seek to prevent.

Given this situation, it is clear any hold-separate order issued by this Court would be ineffective

as a means to protect Plaintiffs from this particular form of asserted harm.  Furthermore,

Plaintiffs do not demonstrate how, if they ultimately are successful in their cause of action, a

brief delay in the divestiture of Medco from ESI would cause them any additional immediate and

irreparable harm.  As such, this asserted harm does not provide the proper basis for the issuance

of a preliminary injunction holding separate Medco and ESI.

Second, Plaintiffs argue that the merger between ESI and Medco would immediately

harm them and their members "in the form of loss of goodwill and reputation because they will

be forced to reduce hours and services and will be unable to serve patients who are forced to use

ESI-Medco's mail-order and designated specialty drug services." (Doc. 23 at 17).  Plaintiffs add

to this argument somewhat in their reply brief, indicating that the potential change in

reimbursement rates by ESI, as well as the possibility that ESI will divert its customers to its

mail order and  specialty pharmacies, may cause some of them to lose their businesses. (Doc. 48

at 9-10).  Plaintiffs admit that, as of the time of the filing of their reply brief, these actions had

not yet occurred, but describe the threat as "imminent." Id. at 10.

Simply put, the arguments raised by Plaintiffs in their briefs, as well the evidence they

provide in support thereof, see (Docs. 23-1 – 23-22) and (Docs. 48-1 – 48-12), never raise this

avenue of potential harm beyond the speculative level, and fail to demonstrate its immediacy.

Accordingly, it would be inappropriate to issue a preliminary injunction using these assertions as

a basis.

Because Plaintiffs have not met their burden to establish the likelihood of immediate,

irreparable harm that could be alleviated by the issuance of a preliminary injunction, their motion

must be denied.

AND NOW, this 25th day of April, 2012,

IT IS HEREBY ORDERED that, for the reasons stated above, Plaintiffs' amended

motion for a temporary restraining order/permanent injunction and expedited schedule (Doc. 22)

will be disposed in the following manner.  First, consistent with the order of this court of

April 3, 2012, Plaintiffs' motion, to the extent that it is for a temporary restraining order, will be

treated as one for preliminary injunction and is, hereby, DENIED.  To the extent that Plaintiffs

seek a permanent injunction and expedited discovery schedule, this Court's decision will be

deferred until after a ruling is made on Defendants' pending motion to dismiss.  <u>See</u> (Doc. 43).


                                                    BY THE COURT:


                                                    <u>s/Cathy Bissoon</u>
                                                    CATHY BISSOON
                                                    UNITED STATES DISTRICT JUDGE


cc (via CM/ECF):
All Counsel of Record